FORCHELLI, CURTO, DEEGAN,
SCHWARTZ, MINEO & TERRANA, LLP
Proposed Attorneys for Skip Barber Racing School LLC
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
(516) 248-1700
Gerard R. Luckman
Brian J. Hufnagel

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                   Chapter 11

SKIP BARBER RACING SCHOOL LLC,          Case No. 17-35871 (CGM)


                              Debtor.
------------------------------------------------------------x

**EMERGENCY APPLICATION FOR ORDERS (1) AUTHORIZING THE
USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105, 361 and
363, (2) SCHEDULING A FINAL HEARING AND ESTABLISHING
NOTICE REQUIREMENTS PURSUANT TO BANKRUPTCY RULES 2002
AND 4001, AND (3) GRANTING RELATED RELIEF**

TO:    THE HONORABLE CECILIA G. MORRIS
       CHIEF UNITED STATES BANKRUPTCY JUDGE:

Skip Barber Racing School LLC (the "**Debtor**") the above-captioned debtor and debtor-

in-possession, submits this application (the "**Application**") seeking the entry of interim and final

orders authorizing and approving the terms and conditions under which the Debtor may use cash

collateral, and scheduling a final hearing thereon, and the *Declaration of Michael Culver Under*

*Local Rule 1007-2 in Connection with Chapter 11 Filing, and Local Rule 9077-1 in Support of*

*Certain "First Day" Motions,* dated May 22, 2015 (ECF Doc. No. 3) (the "**1007 Declaration**")

in support of the Application, respectfully sets forth and represents as follows:

## SUMMARY OF RELIEF REQUESTED

1.       By this Application, the Debtor requests entry of an order pursuant to §§ 105, 361, 362 and 363 of title 11, United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), (i) authorizing the use of "cash collateral," as such term is defined Bankruptcy Code § 363, in which People's United Bank, N.A.  ("**People's**" or the "**Prepetition Lender**") and CMS Mezzanine Debt Subpartnership ("**CMS**") have an interest (the "**Cash Collateral**"), (ii) providing adequate protection (as hereinafter defined) to People's and CMS; (iii) vacating and modifying the automatic stay imposed by Bankruptcy Code § 362 to the extent necessary to implement and effectuate the terms and provisions of any such Order; and (iv) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") to be held before this Court to consider entry of a final order approving (a) the Debtor's use of Cash Collateral and (b) the granting of adequate protection to People's and CMS, all on a final basis (the "**Final Order**").  A proposed interim order (the "**Interim Order**") is annexed hereto as **Exhibit A**.[1]   In accordance with Bankruptcy Rule 4001 and Local Rule 4001-2, below is a summary of the terms of the use of Cash Collateral:

> a. Parties with an Interest in the Cash Collateral.  The parties with an interest in the Cash Collateral are People's and CMS.
>
> b. Use of Cash Collateral.  The Debtor shall use Cash Collateral to fund the operation of its business in accordance with the budget (the "**Initial Approved Budget**") setting forth on a line-item basis the Debtor's anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtor expects to incur during each week of the Initial Approved Budget. A copy of the Initial Approved Budget is annexed

---

[1] People's counsel for this chapter 11 case was recently retained, and has not yet had the opportunity to review or comment upon the Interim Order.  All of People's rights are reserved.

hereto as **Exhibit B**.

c. <u>Events of Default</u>. The Debtor believes that People's and CMS would require that the occurrence of any of the following events shall constitute an event of default:

(i)    The Court enters an order authorizing the sale of all or substantially all assets of the Debtor that does not provide for the payment in full to People's of its claims in cash upon the closing of the sale, unless otherwise agreed by People's in its sole and absolute discretion;

(ii)    The Debtor ceases operations of its present business as such existed on the Petition Date or takes any material action for the purpose of effecting the foregoing without the prior written consent of People's, except to the extent contemplated by the Budget;

(iii)    The Debtor's bankruptcy case is either dismissed or converted to a Chapter 7 case, pursuant to an order of the Court, the effect of which has not been stayed;

(iv)    A Chapter 11 trustee, an examiner, or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed;

(v)    A change in the Debtor's ownership or management occurs, in a manner that is not reasonably acceptable to People's;

(vi)    This Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of People's; (i) materially and adversely affect the rights of People's hereunder, or (ii) materially and adversely affect the priority of any or all of People's claims and/or the liens granted herein;

(vii)    The Debtor expends any funds or monies for any purpose other than those set forth on the Budget within a variance of ten (10) percent, or the Debtor's net cash flow, as set forth in the Budget, is more than ten (10) percent less than the net cash flow projections set forth in the Budget at any time, but any accrued expenses of the professionals retained by the Debtor or the Committee in excess of the budgeted amounts shall not, in and of itself, be an Event of Default;

3

(viii)    The occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, or otherwise in each case as determined by People's in: (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtor; (2) the Debtor's ability to repay People's; and/or (3) the value of the People's Collateral;

(ix)    Any material and/or intentional misrepresentation by the Debtor in any financial reporting or certifications to be provided by the Debtor to People's;

(x)    Non-compliance or default by the Debtor with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within seven (7) days after notice of such non-compliance or default is given to the Debtor by People's;

(xi)    The failure to obtain entry of a Final Order authorizing use of Cash Collateral and DIP Financing on or before July__, 2017 or such time as may be extended upon the consent of People's;

(xii)    The Debtor fails to have identified a purchaser for substantially all of its assets at the conclusion of a Court-approved auction which shall occur within sixty (60) days of the Petition Date unless such date is extended by People's upon reasonable request made by the Debtor;

Interim Order at ¶ 8.

d.    Adequate Protection. As adequate protection for any diminution in the Collateral as a result of the use of Cash Collateral, People's and CMS shall receive (i) a superpriority administrative expense claim (the "**Superpriority Claim**") under Bankruptcy Code § 507(b) and (ii) valid, perfected and enforceable security interests (the "**Adequate Protection Liens**") upon all of the pre and post petition assets of the Debtor presently owned or hereinafter acquired, wherever located, of any kind and nature, including but not limited to the collateral described in the People's Documents together with the proceeds and products thereof, including but not limited to accounts receivable and inventory, wherever located whether in possession of the Debtor or third parties, under Bankruptcy Code § 361(2) (excluding claims which have or may be commenced under Bankruptcy Code §§ 544,

4

547, 548 and 550, or the products or proceeds thereof). CMS shall receive Adequate Protection Liens subordinate to People's Adequate Protection Liens for any diminution in the collateral as a result of the use of Cash Collateral.

e. Carve Out. The pre-petition liens, Superpriority Claim, and the Adequate Protection Liens, shall be subject to the following: (i) Quarterly fees of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. 1930, including any fees and applicable interest thereon pursuant to chapter 123 of title 28, United States Code; (ii) allowed professional fees and expenses of Debtor's counsel in an amount not to exceed $35,000 over and above any amount left on a retainer received by counsel; an amount not to exceed $25,000 for a claims agent if required in this case and a reasonable carve out to be negotiated with a committee, based on the economics of this case; and (iii) any cost and fees of a chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $7,500 (the "**Carve Out**").

f. Determination of the Validity, Enforceability, Priority, and Amount of the People's Debt and CMS Lien. The right of a creditors' committee, if any, to challenge within sixty (60) days from the appointment of such counsel, or if no committee is formed or if the committee fails to appoint counsel, any party-in-interest within seventy-five (75) days from the date of entry of a Final Order (or a longer period for cause shown before the expiration of such period), to challenge the amount and the validity of liens securing the People's Debt and CMS Lien, and the validity, enforceability, priority and amount of the People's Debt and CMS Lien is preserved.

g. Termination Date. In the absence of a further order of this Court, the Debtor shall no longer be authorized to use Cash Collateral without the written consent of People's after the earliest to occur of (i) the confirmation of a plan of reorganization for the Debtor; (ii) the sale of substantially all of the assets of the Debtor; (iii) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee under Chapter 11 of the Bankruptcy Code; (v) the appointment of an examiner with expanded powers under the Bankruptcy Code; (vi) the Debtor's ceasing and discontinuing its ordinary business operations; (vii) sixty dams from the Petition Date (unless otherwise extended by People's); or (viii) upon the date that People's delivers a notice to the Debtor of an Event of Default. *See* Default provisions and section (a) above, and Interim Order at ¶ 8.

## BACKGROUND

2.      On May 22, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for

relief under chapter 11 of The Bankruptcy Code in this Court.

**People's National Bank Debt**

3.      Prior to the Petition Date, the Debtor entered into certain loan documents and

security agreements with People's which include, but are not limited to:

      a.      SBA Loan No.:  4323145001
           $1,000,000 SBA Express Term Loan
           Dated:  January 25, 2011

      b.      SBA Loan No.: CAP 62752050
           $250,000.00  SBA CapLines Loan
           Dated: June 28, 2013

      c.      MasterCard BusinessCard ChargeCard Account
           Revolving Credit Agreement

(collectively hereinafter referred to as the "People's Documents").  Pursuant to the People's

Documents, People's made loans, advances, and other financial accommodations to and for the

benefit of the Debtor secured by a first lien on, and security interest in, substantially all of

Debtor's assets including but not limited to, all of Debtor's existing and after acquired accounts,

inventory, machinery, vehicles, equipment, and intangibles, together with the proceeds and

products thereof (the "Collateral").

**CMS**

4.      The Debtor and CMS Mezzanine Debt Subpartnership ("CMS") are parties to that

certain Amended and Restated Loan and Security Agreement  by and Between Skip Barber

Racing school LLC as borrower and CMS Mezzanine Debt Subpartnership as Lender Dated as of

January 27, 2011 as Amended and Restated as of May 22, 2015 (the "CMS Debt") pursuant to

which CMS holds claims in the aggregate principal amount of $6,400,109 as of the Petition Date

secured by a second priority lien (the "CMS Lien") on substantially all of the Collateral.

**Culver Estate Debt**

5.      The Debtor and the Estate of David M. Culver (the "Culver Estate") are parties to

a Promissory Note and Security Agreement dated May 18, 2017 pursuant to which the Debtor

borrowed $41,717 (the "Estate Loan") to fund a chapter 11 case.

**The Chapter 11 Case**

6.      The Debtor has determined that it is in the best interest of its creditors to file this

chapter 11 case in order to preserve going concern value pending the sale of its business and

stay various pending litigation and, after such sale, propose a chapter 11 plan which maximizes

the value of the Debtor's estate for the benefit of all of the Debtor's creditors, rather than a select

few.

7.      In the first two months of this case, the Debtor will continue its efforts to market

its assets for sale.  The Debtor estimates that by the end of July 2017, it will have identified a

buyer for substantially all of its business assets, and can begin liquidating any remaining  assets.

8.      As a result of the Debtor's ongoing operations, the Debtor's continued use of cash

collateral is essential.  As described above, the Debtor continues to have employees and hire

independent contractors to provide course training.  Debtor must be able to pay those individuals.

In addition, the Debtor continues to sell its programs, which requires the Debtor to continue

paying its sales and administrative staff.  The Debtor also requires the use of cash collateral to

pay customary operating expenses until the Debtor closes on a sale of its business.

9.      Absent use of cash collateral, the Debtor will not have sufficient liquidity to

continue to satisfy the above-described obligations, resulting in immediate and irreparable harm

to the Debtor's creditors, its estate, and its employees.  Use of cash collateral at the onset of this

case is critical to avoid immediate and irreparable harm to the estate, and to support the Debtor's

effort to maximize the estate for the benefit of all creditors and parties-in-interest.

10.     People's and CMS indicated their willingness to allow the Debtor to use cash

collateral the first sixty (60) days of the Debtor's case, which is required to meet the cash

requirements of the Debtor's operations.

11.     Additional information about the Debtor's business and events leading up to the

Petition Date can be found in the 1007 Declaration.

12.     The Debtor is authorized to remain in possession of its property and to continue in

the operation and management of its business as a debtor-in-possession under Bankruptcy Code

§§ 1107 and 1108.

13.     To date, no committee, trustee, or examiner has been appointed in this case.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction consider this matter pursuant to 28 U.S.C. §§ 157 and

1334, and the "Amended Standing Order of Reference" of the United States District Court for

the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

15.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

16.     Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

17.     The statutory predicates for the relief requested herein are Bankruptcy Code §§

105, 361, 362, 363, Bankruptcy Rules 2002, 4001, and 9014 and Local Rule 4001-2.

## SUMMARY OF RELIEF REQUESTED

18.     By this Application, Debtor seeks entry of an Interim Order and Final Order

(collectively, the "**Orders**");

a)      authorizing use of Cash Collateral on an interim basis pursuant to Bankruptcy Code § 363(c)(2)(B), granting People's and CMS adequate protection for any diminution in the Collateral as a result of the use thereof, through the Superpriority Claim and Adequate Protection Liens, pursuant to Bankruptcy Code §§ 507(b) and 361(2), and granting CMS adequate protection for any diminution of its collateral through Adequate Protection Liens subordinate to People's Adequate Protection Liens pursuant to Bankruptcy Code § 361(2);

b)      modifying the automatic stay provisions of Bankruptcy Code § 362 to the extent necessary to permit People's to implement the provisions of the Orders;

c)      scheduling and approving the form and manner of notice of the hearing (the "**Final Hearing**") to consider entry of the Final Order granting the relief sought herein on a permanent basis; and

d)      granting the Debtor such further relief as is just and proper.

19.      The Debtor requests that the Court enter the Interim Order and schedule a Final Hearing to consider entry of the Final Order on or before June 15, 2017.

## PROPOSED USE OF CASH COLLATERAL

20.      The Debtor's ability to satisfy its ongoing obligations to present employees and trainers and under its contracts with race tracks hinges on its ability to use cash collateral.  It is axiomatic that a business, such as the Debtor's, requires sufficient liquidity to satisfy its ongoing cash requirements, to satisfy rent and equipment obligations, pay employees, pay utilities and to fund myriad other ordinary course day-to-day expenditures. In addition, the Debtor's suppliers, vendors and other creditors are looking to the immediate approval of the use of cash collateral for assurance that they will be paid on a continuous and timely basis.  The Debtor's employees see the use of cash collateral as necessary to ensure timely payment of payroll and other employee-related obligations. The ongoing cooperation of suppliers, vendors and employees is critical if the Debtor is to continue to operate in an orderly and reasonable manner which seeks to

preserve and enhance the value of its assets for the benefit of all parties-in-interest until a sale can be consummated.

21.     Without immediate access to cash collateral, there would be a precipitous termination of the Debtor's business that will destroy the potential going-concern value of the Debtor's assets and threaten the Debtor's ability to satisfy its present obligations to its customers, resulting in immediate and irreparable harm to the Debtor's estate.  Quite simply, the importance of the Debtor's immediate need for use of cash collateral cannot be overstated.

22.     As could be expected in the Debtor's financial posture, the Debtor believes that People's and CMS will require that in exchange for the Debtor's use of cash collateral, to the extent of any diminution in the collateral as a result thereof, they will be entitled to replacement liens and superpriority administrative expense status pursuant to Bankruptcy Code §§ 361(2) and 507(b), and otherwise over all administrative expenses of the kinds specified in Bankruptcy Code §§ 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114, subject only to the Carve Out.

23.     A brief summary of certain of the key terms with respect to the Debtor's use of cash collateral are below; the Court and parties-in-interest, however, are respectfully referred to the proposed Interim Order for a full recitation of the terms and conditions.

| | |
|---|---|
| Debtor: | Skip Barber Racing School LLC |
| Prepetition Secured Creditors: | People's National Bank N.A. CMS Mezzanine Debt Subpartnership |
| Use of Cash Collateral: | The Debtor may use cash collateral for the following limited uses as set forth in the Initial Approved Budget in connection with the (i) payroll and related costs; (ii) payment of expenses in connection with operating its business; (iii) payment of post-petition utilities; (iv) payment of chapter 11 expenses as provided in the Initial Approved Budget; and (v) necessary office expenses and other |

|  |  |
|---|---|
|  | expenses of administering this case, all in accordance with the Initial Approved Budget. |
| Priority and Liens: | (i) Superpriority Claims, entitled to superpriority administrative expense claim status pursuant to Bankruptcy Code § 507(b), superior to any and all administrative expense of the Debtor, except for the Carve Out; and (ii) Adequate Protection Liens pursuant to Bankruptcy Code § 361(2) as adequate protection for any diminution in the collateral as a result of the use of Cash Collateral, secured by all of the pre- and post-petition assets of the Debtor, presently owned or hereinafter acquired, wherever located, of any kind and nature, including but not limited to the Collateral described in the People's Documents together with the products and proceeds thereof, including but not limited to accounts receivable and inventory, wherever located whether in possession of the Debtor or third parties, as set forth more fully in the Orders (the "**Collateral**").   In addition, CMS is entitled to Adequate Protection Liens subordinate to People's Adequate Protection Liens. |
| Term: | Provided that no other event of default has occurred, the Debtor's use of Cash Collateral shall end on the date that is the earliest to occur of (i) the confirmation of a plan of reorganization for the Debtor; (ii) the sale of substantially all of the assets of the Debtor; (iii) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee under Chapter 11 of the Bankruptcy Code; (v) the appointment of an examiner with expanded powers under the Bankruptcy Code; (vi) the Debtor's ceasing and discontinuing its ordinary business operations; or (vii) sixty (60) days from the Petition Date. |
| Conditions Precedent: | The Debtor's use of cash collateral, to the extent of any diminution in the collateral as a result thereof, is conditioned upon satisfaction of usual and customary conditions precedent including, among other things entry of the Interim Order and the Final Order, each in form and substance satisfactory to People's in its sole discretion, which Orders shall contain provisions granting People's the Superpriority Claim and Adequate Protection Liens, and CMS the Adequate Protection Liens, subordinate to People's Adequate Protection Liens, each as set forth above, subject to the Carve Out. |
| Modification of Automatic Stay: | The Orders allow People's to seek expedited relief in the event of a default under the Orders by providing seven (7) days notice to the Debtor, the Debtor's counsel, the committee of unsecured creditors, if one is appointed, or to the twenty (20) largest |

unsecured creditors, CMS, counsel to CMS, and the Office of the U.S. Trustee, by facsimile or e-mail transmission, of a hearing and motion. The Debtor shall have seven (7) days from receipt of such notice to cure such default.

24.     The Debtor believes that the terms of its use of the Cash Collateral are reasonable and fair under the circumstances and, therefore, serve the best interests of the Debtor, its creditors and its estate.

### BASIS FOR APPROVAL OF THE USE OF CASH COLLATERAL AND THE GRANTING OF LIENS AND SUPERPRIORITY ADMINISTRATIVE CLAIMS IN CONNECTION THEREWITH

25.     As described above, as adequate protection, the Debtor proposes to grant subject only to the Carve Out, People's a superpriority administrative claim and a replacement lien on and security interest in all or substantially all of the Debtor's assets, and CMS a superpriority lien on and security interest in substantially all of the Debtor's assets, subordinate to People's. Such relief is authorized pursuant to Bankruptcy Code §§ 361(2), 503(b) and 507.

26.     The term "adequate protection" is not defined in the Bankruptcy Code. Courts have held that the precise contours of the concept must be determined on a case-by-case basis. *See, e.g., In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in collateral during the reorganization process. *See, e.g., In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)

27.     Here, the Debtor respectfully submits that the Interim Approved Budget establishes that People's and CMS' collateral is adequately protected from erosion during the chapter 11 case.

### REQUEST FOR IMMEDIATE USE OF CASH COLLATERAL IS NECESSARY TO AVOID IRREPARABLE HARM

28.     Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), a minimum of 14 days'

notice is required before a final hearing on this Application may commence.   Bankruptcy Rules

4001(b)(2) and (c)(2) also provide, however, that the Court may conduct a hearing before such

14 day period expires, and may authorize the use of only that amount of cash collateral necessary

to avoid immediate and irreparable harm to the estate pending a final hearing. Fed. R. Bankr. P.

4001(c)(2).

29.     As stated above, it is essential to the continued operation of its business that the

Debtor be authorized by this Court to use of cash collateral on an interim basis as set forth herein

pending the Final Hearing.

30.     Consequently, the Debtor will need to use cash received from operating its

business and scheduling and conducting events to meet all of its working capital needs including,

but not limited to, payment for employee wages, salaries, leasehold expenses with respect to

office space and track rentals, and other operating expenses.   That cash received from the

Debtor's receivables is part of People's and CMS' collateral.   Absent the immediate use of cash

collateral, the Debtor's attempts to maximize its value for creditors would be immediately and

irreparably jeopardized.

31.     As is apparent from the foregoing, the interim relief requested in this Application,

pending the Final Hearing, is necessary, appropriate and fully warranted, and is essential to avoid

immediate and irreparable harm to the Debtor, its estate and its creditors.

## NOTICE WITH RESPECT TO THE INTERIM ORDER

32.     The Debtor will provide notice by electronic transmission or overnight mail of

this Application pursuant to Bankruptcy Rule 4001 to: (i) the Debtor's twenty (20) largest

unsecured creditors; (ii) the Office of the United States Trustee for Region 2; (iii) counsel to

People's; (iv) counsel to CMS; (v) counsel to Culver Estate; (vi) the Debtor's largest secured creditors; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of New York; and (viii) the New York State Department of Taxation and Finance. The Debtor respectfully submits that such notice is sufficient and requests that this Court find that no further notice of the relief requested herein is required.

## NOTICE WITH RESPECT TO THE FINAL HEARING AND FINAL ORDER

33.    The Debtor also proposes to serve a copy of the Interim Order, this Application (together with exhibits) and Notice of the Final Hearing and entry of the Final Order by electronic transmission or overnight mail, within two (2) days after entry of the Interim Order, upon: (i) the Debtor's twenty (20) largest unsecured creditors; (ii) the Office of the United States Trustee for Region 2; (iii) counsel to People's; (iv) counsel to CMS; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the Southern District of New York; (vii) the New York State Department of Taxation and Finance; and (viii) all parties that have filed notices of appearances and requests for notices in the Debtor's chapter 11 case.

34.    The Debtor will serve Notice of entry of the Final Order by first class mail on the parties listed above, and all of the Debtor's creditors.

35.    The Debtor respectfully submits that such notice is sufficient, and requests that this Court find that no further notice of the Interim Order, the Final Hearing, the Final Order and all proceedings to be held in connection therewith is required.

36.    No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that the Court: (a) enter the Interim

Order (1) authorizing the Debtor to use cash collateral on an interim basis, and (2) setting a date

for the Final Hearing; (b) enter the Final Order authorizing the Debtor to use cash collateral; and

(c) grant the Debtor such further relief as is just and proper.

Dated: May 22, 2017
        Uniondale, New York

                                      FORCHELLI, CURTO, DEEGAN,
                                      SCHWARTZ, MINEO & TERRANA, LLP
                                      Proposed Attorneys for the Debtor


                                      By: */s/ Gerard R. Luckman*
                                          Gerard R. Luckman
                                      A Member of the Firm
                                      333 Earle Ovington Boulevard, Suite 1010
                                      Uniondale, NY  11553
                                      (516) 248-1700

15