# EXHIBIT A

# BIDDING PROCEDURES

# BIDDING PROCEDURES

These bidding procedures (the "Bidding Procedures") set forth the terms by which Skip Barber Racing School LLC, (the "Debtor" or the "Seller"), Debtor and debtor in possession may effectuate a sale (the "Sale") of substantially all of its assets (the "Purchased Assets") subject to the terms and conditions and in accordance with the process and procedures set forth herein. These Bidding Procedures were approved by an order (the "Bidding Procedures Order") entered on June __ , 2017, by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the following proceeding: In re Skip Barber Racing School LLC, Case No. 17-35871 (CGM).

## I. Important Dates, Contact Information, and Terms

The following dates and deadlines apply to the proposed Sale.

| | |
|---|---|
| **General Bid Deadline:** | July 18, 2017 at 5 p.m. (prevailing ET) |
| **Auction:** | July 20, 2017 at 10:00 a.m. (prevailing ET) |
| **Sale Hearing:** | July 24, 2017 at 11:00 a.m. (prevailing ET) |
| **Sale Closing:** | on or before July 31, 2017 |

The key dates in the sale process may be extended by the Debtor in consultation with the Consultation Parties (defined below) or by the Bankruptcy Court for cause.

Parties interested in the Assets may contact the Debtor through their attorneys by contacting Gerard R. Luckman, Esq, Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP, 333 Earle Ovington Blvd., Suite 1010, Uniondale, NY 11553, telephone: (516) 248-1700, email: gluckman@forchellilaw.com.

"Consultation Parties" means, collectively, the Debtor and its professionals and advisors, People's Untied Bank, N.A. ("People's") and its professionals and advisors, CMS Mezzanine Debt Subpartnership ("CMS") and its professionals and advisors, and the Official Committee of Unsecured Creditors, if one is appointed in this case (the "Creditors Committee"), and its professionals and advisors.

## II. Due Diligence and Participation

To participate in the sale process as a potential purchaser, conduct due diligence upon the Assets and be entitled to submit a bid for consideration hereunder, a party (each an "Interested Party") must deliver the following to the Debtor:

(A) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor;

(B) a statement and other factual support demonstrating to the Debtor's reasonable satisfaction, after consultation with the Consultation Parties, that the Interested Party has a *bona fide* interest in purchasing the Assets or some subset of the Assets; and

(C) sufficient information, as determined by the Debtor in consultation with the Consultation Parties, to confirm that the Interested Party has the financial wherewithal and any required corporate, legal or other authorization necessary to close the Sale, including, but not limited to, a form of financial disclosure acceptable to the Debtor in their discretion.

Upon satisfactory receipt of the items above, as determined by the Debtor in consultation with the Consultation Parties, then such Interested Party will be deemed a "Potential Bidder," and the Debtor will deliver to such Potential Bidder: (A) an information package containing information and financial data with respect to the Assets (the "Information Package"); and (B) access information for the Debtor's confidential electronic data room concerning the Assets (the "Data Room"). The identity of each Potential Bidder may be disclosed to any other Potential Bidders. The Debtor will deliver a list of all current Potential Bidders to the Consultation Parties within one (1) business day after each Potential Bidder is added.

Until the business day immediately preceding the Bid Deadline, the Debtor will provide any Potential Bidder such due diligence access or additional information as the Debtor, in consultation with the Consultation Parties, determine to be reasonably requested and appropriate under the circumstances. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtor will provide such materials to all Potential Bidders to the extent practicable, as well as to the Consultation Parties. The Debtor retains the right to establish, maintain and make available a "virtual data room" containing due diligence material in written form, access to which shall be made available to all Potential Bidders.

Unless otherwise determined by the Debtor, in consultation with the Consultation Parties, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder or (B) the bidding process is terminated in accordance with its terms. Except as provided above with respect to the Information Package and access to the Data Room, neither the Debtor nor their representatives will be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any party

A party may participate in the bidding process by submitting a bid to purchase less than all of the Purchased Assets. In addition, parties may participate in the bidding process by submitted a joint bid to purchase all, or less than all, of the Purchased Assets.

### III. General Bid Deadline

A Potential Bidder that desires to make a bid shall deliver written and electronic copies of its bid in both PDF and Word format to the Notice Parties listed below so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on July 18, 2017 (the "General Bid Deadline").

The "Notice Parties" means each of the following: (A) the Debtor c/o Michael C. Culver, 5489 Technology Parkway, Braselton, GA 30517, telephone: (203) 434-7711, mculver@skipbarber.com; (B) counsel to the Debtor, Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP, 333 Earle Ovington Blvd., Ste. 1010, Uniondale, New York 11553, attn: Gerard R. Luckman, gluckman@forchellilw.com and Brian J. Hufnagel, bhufnagel@forchellilaw.com; (C) counsel to People's, Updike, Kelly & Spellacy, P.C., 100 Pearl Street, P.O. Box 231277, Hartford, CT 06123-1277, attn: Kevin J. McEleney, kmceleney@uks.com and Ed Pontacoloni, epontacoloni@uks.com, (D) counsel to CMS, Drinker Biddle & Reath LLP, 321 Great Oaks Blvd., Albany, NY 12203 attn: Stacy A. Lutkus, stacy.lutkus@dbr.com, (D) counsel to the Creditors' Committee if one is appointed.

## IV. Qualified Bids

Assuming that there is an Auction, a Potential Bidder will not be entitled to participate in any Auction or otherwise purchase the Assets, unless it shall have submitted a Qualified Bid by the General Bid Deadline in accordance with these Bidding Procedures that includes all of the following items (the "Bid Package"):

(A) An executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor;

(B) The true identity of the party submitting the bid and details regarding any other parties participating in the bid;

(C) A written acknowledgment by the Qualified Bidder and each participant in such bid that it/they agrees to all of the terms set forth in these Bidding Procedures;

(D) Written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and acceptance of the terms set forth in these Bidding Procedures, or representation that no such authorization or approval is required; provided, however, that neither People's nor CMS, or their designated affiliate(s) shall be required to provide such information;

(E) Audited (if in existence) or unaudited financial statements and/or other written evidence of a financing commitment or other evidence, satisfactory to the Debtor, in consultation with the Consultation Parties, of the financial ability to close under its asset purchase agreement within the deadline described above; provided, however, that neither Peoples nor CMS, or their designated affiliate(s) shall be required to provide such information;

(F) A signed Purchase Agreement, in form and substance substantially similar to the form Asset Purchase Agreement attached hereto as Exhibit 1 and incorporated herein by reference, which shall contain a list of the unexpired leases and executory contracts to be assumed and assigned to the bidder;

(G) The Potential Bidder will pay any and all cure costs associated with the assumption of any unexpired leases or executory contracts;

(H) The bid is formal, binding and unconditional (except for those conditions expressly set forth in the applicable APA, including expressly stating any conditions relating to the assumption and assignment of contracts and leases) and is not subject to any due diligence or financing contingency and is irrevocable until the earlier of 48 hours after the Sale of the Purchased Assets has closed or 30 days after the conclusion of the Sale Hearing;

(I) Does not entitle the Potential Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets;

(J) A Good Faith Deposit (defined below); and

(K) The Qualified Bid is received by the Bid Deadline.

With the exception of Peoples and CMS, or their designated affiliate(s), a Potential Bidder must deposit with counsel to the Debtor as escrow agent (the "Deposit Agent") a cash deposit equal to the greater of (i) $100,000 or (ii) five (5%) percent of the cash purchase price set forth in the Purchase Agreement submitted by the Potential Bidder (any such deposit, a "Good Faith Deposit"). The Good Faith Deposit must be made by wire transfer and will be held by the Deposit Agent.

If a bid is received and, in the Debtor's judgment, after consultation with the Consultation Parties, it is not clear whether the bid is a Qualified Bid, the Debtor and the Consultation Parties may consult with the Potential Bidder and seek additional information in an effort to establish whether or not a bid is a Qualified Bid.

The Debtor shall provide to the Consultation Parties copies of each Bid Package received. A Bid Package received from a Potential Bidder that is determined by the Debtor, after consultation with the Consultation Parties, to meet the above requirements (or any modification to the above requirements made after consultation with the Consultation Parties) will be considered a "Qualified Bid," and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For purposes of the Auction, People's and CMS, or their designated affiliate(s), will each be deemed a Qualified Bidder without the requirement of any deposit but subject in all respects to the Credit Bidding section set forth below.

A Qualified Bid and bids at the Auction may be valued by the Debtor, after consultation with the Consultation Parties, based upon factors such as: (A) the purported amount of the Qualified Bid, including the bid's impact on all constituents of the Debtor, any benefit to the Debtor's bankruptcy estate from any assumption of liabilities, the waiver of liabilities through a Credit Bid, and an analysis of other non-cash consideration; (B) the value to be provided to the

4

Debtor under the Qualified Bid, including the net economic effect upon the Debtor's estate; (C) contingencies with respect to the Sale and the ability to close the proposed Sale without delay, and any incremental costs to the Debtor in closing delays; (D) the ability to obtain any and all necessary governmental approvals for the proposed transaction; and (E) any other factors the Debtor, after consultation with the Consultation Parties, may deem relevant.

Except with respect to People's and CMS, or their designated affiliate(s), the Debtor, in consultation with the Consultation Parties, reserves the right to impose additional terms and conditions with respect to all Qualified Bidders.

### V. Credit Bid

For purposes of these Bidding Procedures and the Auction, People's and CMS, or their designated affiliate(s), shall each be deemed a Qualified Bidder, and shall have the right to submit a credit bid up to the full amount of its respective allowed secured claim for the Purchased Assets at the Auction ("Credit Bid"). As a condition to Credit Bidding any portion of its secured claim, People's and CMS, or their designated affiliate(s), shall include an offer to fund, in cash, at Closing, the Carve-out (as that term is defined in the Interim Cash Collateral Order, or a later final order approving the use of cash collateral) and any reasonable, allowed estate professional fees and expenses incurred and unpaid as of Closing. Notwithstanding the foregoing, nothing contained herein shall be deemed consent by the Creditors' Committee, if any, of People's, CMS, or their designated affiliate(s)' ability to Credit Bid its secured claim and all such rights to object to Credit Bidding are hereby preserved. In the event there is an objection to the rights of People's or CMS to credit bid up to the full amount of its respective secured claim, such dispute shall be subject to the determination of the Bankruptcy Court.

### VI. Baseline Bid and Stalking Horse Selection

The Debtor, after consultation with the Consultation Parties, will select what they determine to be the highest or best Qualified Bid (or collection of Qualified Bids) for the Purchased Assets (the "Baseline Bid") to serve as the starting point at the Auction. As soon as practicable, the Debtor will identify the Baseline Bid and provide to all Qualified Bidders copies of all Qualified Bids (with such distribution permissible by electronic means, including posting to the Data Room).

The Debtor reserves the right to negotiate any offer made to purchase the Assets, and to determine whether it is beneficial to the estate and its creditors to enter into a stalking-horse agreement for the Assets prior to the Auction, provided that the Debtor will not concede to a break-up fee in excess of 3.0% of the stalking-horse bid without further order of the Court, and provided further that the first Bid following the Baseline Bid, if the stalking horse bidder submits the baseline Bid, shall equal or exceed the amount of the stalking-horse purchaser's bid plus the break-up fee.

5

## VII. Auction

If more than one Qualified Bid is received by the General Bid Deadline, then the Debtor will conduct an auction (the "Auction") to take place at 10:00 a.m. (prevailing ET) on July 20, 201&, at Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP, 333 Earle Ovington Blvd., Suite 1010, Uniondale, New York 11552, or such other time as the Debtor, after consultation with the Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids.

Only Qualified Bidders and their designated agents will be eligible to participate at the Auction, subject to such modifications and limitations as the Debtor may impose in good faith, after consultation with the Consultation Parties. Professionals and/or other representatives of the Consultation Parties and a representative from the Office of the United States Trustee for the Southern District of New York will be able to attend and observe the Auction.

At the Auction, participants will be permitted to increase their bids. Bidding on the Assets will start at the purchase price and terms proposed in the Baseline Bid, and will proceed thereafter in increments of $20,000 (the "Minimum Overbid").

The Debtor may adopt rules, after consultation with the Consultation Parties, for the Auction at any time that the Debtor determines to be appropriate to promote the goals of the bidding process and are not inconsistent with these Bidding Procedures, including auctioning subsets of the Purchased Assets first but making any "winning bid" on a subset of the Purchased Assets contingent upon the outcome of the Auction of all of the Purchased Assets. The Debtor, in consultation with the Consultation Parties, is permitted, but not required, to ascribe a liquidation value to certain assets to assist the Debtor in comparing bids for a subset of the Purchased Assets against bids for all of the Purchased Assets, provided that any ascribed liquidation value shall not be determinative of the actual value of such Purchased Assets. If the Debtor believes that such value would be overly speculative under the circumstances, however, they may decline to assign any such liquidation values. Any rules developed by the Debtor will provide that all bids will be made and received in one room, on an open basis, and all other Qualified Bidders will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid submitted in response to the Baseline Bid or to any successive bids made at the Auction will be fully disclosed to all other Qualified Bidders throughout the entire Auction, and each Qualified Bidder will be permitted to take what the Debtor and the Consultation Parties determine to be an appropriate amount of time to respond to the previous bid at the Auction.

The Debtor reserves the right to and may, after consultation with the Consultation Parties, reject at any time before entry of the relevant Sale Order (as defined below) any bid that, in the Debtor's judgment, is: (A) inadequate or insufficient; (B) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures or the terms and conditions of the Sale; or (C) contrary to the best interests of the Debtor and the estate. In doing so, the Debtor may take into account the factors set forth above regarding the contents of a Qualified Bid.

Prior to the conclusion of the Auction, the Debtor, after consultation with the Consultation Parties, will: (A) review and evaluate each bid made at the Auction on the basis of

financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; (B) identify the highest or otherwise best offer or collection of offers (the "Prevailing Bid"); (C) determine which Qualified Bid is the Prevailing Bid and which is the next highest or otherwise best bid (the "Back-Up Bid") for the Purchased Assets; and (D) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the Prevailing Bidder, the amount and other material terms of the Prevailing Bid and the identity of the party that submitted the Back-Up Bid (the "Back-Up Bidder"). At the Sale Hearing, the Debtor will present the Prevailing Bid and the Back-Up Bid to the Bankruptcy Court for approval.

No additional bids may be submitted or considered after the conclusion of the Auction.

**EACH BID - INCLUDING BIDS CONTAINED IN THE BID PACKAGE SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE QUALIFIED BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THE EARLIER OF 48 HOURS AFTER THE SALE OF THE ASSETS HAS CLOSED OR 30 DAYS AFTER THE CONCLUSION OF THE SALE HEARING.**

### VIII. Acceptance of Qualified Bids

The Debtor presently intends to consummate the Sale with the Prevailing Bidder, or if the Prevailing Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Prevailing Bidder, then with the Back-Up Bidder. However, the Debtor's presentation of the Prevailing Bid and the Back-Up Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such bid. The Debtor will be deemed to have accepted the Prevailing Bid or the Back-Up Bid, as applicable, only when such bid has been approved by the Sale Order.

If for any reason the Prevailing Bidder fails to consummate the purchase of the Purchased Assets, or any subset thereof, the Back-Up Bidder may be deemed by the Debtor (after consultation with the Consultation Parties) to be the highest or best bid, and the Debtor and the Back-Up Bidder will thereafter effect the sale of the Purchased Assets to the Back-Up Bidder as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Prevailing Bidder, the Debtor shall have the right to retain the Good Faith Deposit until required to return it by an order of the Bankruptcy Court and shall reserve the right to seek all available damages from the Prevailing Bidder, including, but not limited to, with respect to the Good Faith Deposit.

### IX. The Sale Hearing

On or before July 24, 2017, subject to any continuance or postponement by the Bankruptcy Court, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") to determine whether to approve the Sale of Purchased Assets free and clear of all liens, claims, interests, encumbrances and liabilities, including the assumption and assignment of certain executory contracts and unexpired leases as described in the applicable Purchase Agreement.

At the Sale Hearing, the Debtor will seek Bankruptcy Court Approval of the Sale of the Purchased Assets to the Prevailing Bidder and the Back-Up Bidder. In the event the Prevailing Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Prevailing Bidder, the Debtor will be permitted to close with the Back-Up Bidder without further order of the Bankruptcy Court.  The Debtor's presentation to the Bankruptcy Court for approval of these particular bids does not constitute acceptance of any bids.  The Debtor has accepted a bid only when the Bankruptcy Court, following the Sale Hearing, has approved the Sale and entered an order authorizing and approving the Sale, which shall be in form and substance acceptable to the Debtor and the Prevailing Bidder or the Back-Up Bidder, as applicable (the "Sale Order").  After consultation with the Consultation Parties, the Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (A) an announcement of such adjournment at the Sale Hearing or at the Auction or (8) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

## X.   Terms of Sale: "As Is, Where Is"

Any Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, their agents or the Debtor's chapter 11 estate, whether written or verbal, whether express, implied or by operation of law, except and solely to the extent expressly set forth in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable.  Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets that are the subject of the Auction prior to making its bid, that it has relied solely upon its own independent review and investigation in making its bid.  Except as otherwise provided in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable, all of the Debtor's right, title and interest in the Purchased Assets shall be sold free and clear of liens, claims, interests, encumbrances and liabilities as proposed in the form of Sale Order (collectively, "Liabilities"), with any Liabilities to attach to the proceeds of the Sale as permitted by law and provided in the proposed form of Sale Order.

## XI.   Closing

Except to the extent of any contrary provision in the Purchase Agreement of the Prevailing Bidder or the Back-Up Bidder, as applicable, the closing (the "Closing") shall occur on or before July 31, 2017, subject to the right of the Debtor and the Prevailing Bidder or the Back-Up Bidder, as applicable, to extend such date consistent with such party's Purchase Agreement and these Bidding Procedures.

## XII.   General

The Debtor may, after consultation with the Consultation Parties, amend these Bidding Procedures or the bidding process at any time and from time to time in any manner that they determine will best promote the goals of the Bidding Procedures, including extending or modifying any of the dates described herein. The Debtor shall promptly notify parties in interest and Potential Bidders of any such modifications.  No bidder has any rights against the Debtor,

the estate, or any of the Debtor's other professionals by virtue of any modification of these Bidding Procedures, or by virtue of having or not having its bid accepted by the Debtor or approved by the Bankruptcy Court. To participate in the Auction, each Qualified Bidder will sign an acknowledgment of no rights or claims against the Debtor, the estate, or the Debtor's professionals for the foregoing.

### XIII. Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and while held in escrow will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court. The Deposit Agent will retain the Good Faith Deposits of the Prevailing Bidder and the Back-Up Bidder until the closing of the Sale unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within four business days of the entry of the Sale Order. At the closing of the Sale contemplated by the Prevailing Bid, the Prevailing Bidder will be entitled to a credit for the amount of its Good Faith Deposit. The Good Faith Deposit of the Back-Up Bidder will be released by the Debtor four (4) business days after the Closing of the Sale.

### XIV. Consultation with Consultation Parties

In the event that any Consultation Party or an affiliate of any of the foregoing, submits a Qualified Bid, including without limitation, People's or CMS or their designated affiliate(s), then such party shall cease to be a Consultation Party.

For the avoidance of doubt, if a member of the Creditors' Committee submits a Qualified Bid, the Creditors' Committee will continue to have Consultation Rights; provided, however, that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Purchased Assets and shall not provide any information regarding the sale of the Purchased Assets to such member.

### XV. No Modification to Cash Collateral Order(s)

Nothing herein is intended to or shall be deemed to vary, modify, alter or supersede in any way the terms of the Interim Cash Collateral Order entered by the Bankruptcy Court (or any final order approving the use of cash collateral, if entered by the Bankruptcy Court).

### XVI. Reservation of Rights

In consultation with the Consultation Parties, the Debtor reserves the right to amend or modify the proposed Bidding Procedures, including without limitation, the proposed Bid Deadline, Auction Date, and Sale Hearing date, in connection with the conditions or requirements of any Qualified Bidder (as defined in the Bidding Procedures) who may wish to be a "stalking horse bidder" for the Purchased Assets.